The second case on our docket this morning is 24-30554, Hill v. Jackson Offshore Holdings, LLC. Mr. Davis. Yes, Judges, if it may please the Court, Alan Davis on behalf of Jackson Offshore Operators and Jackson Offshore Holdings. The advanced wage and benefits agreement at issue in this appeal contains two agreements relative to Mr. Hill. First, it required him to bring any claim or lawsuit against the company, meaning the company has identified an agreement, its vessels or its employees in binding arbitration. Second, he agreed to a delegation clause under which he agreed that any dispute as to the enforceability of the first agreement to arbitrate would also be resolved in arbitration. Mr. Hill accepted the benefits of the advanced wage and benefits agreement. To date, he has received over $153,000 in payments under that agreement, including, I believe, $73,000 in payments since he filed this lawsuit. Despite accepting the agreement, he went ahead and filed a lawsuit violating the first arbitration agreement, the one that he agreed to bring any claims for injuries in arbitration. The district court order appealed from compounds that violation by refusing to enforce the delegation clause in the advanced wage agreement. Now, because there's a delegation clause in the agreement, under the Supreme Court precedent in Rent-a-Center and Coinbase and PrimaPaint and numerous other Fifth Circuit decisions we've addressed in the briefings, the district court's proper inquiry was very limited here. It had two questions before it. The first question was, did Mr. Hill challenge the formation or existence of the contract? That's a distinct question from whether he challenged its enforceability or its validity. The question was the existence or formation. The answer here, as the district court correctly found, he did not challenge existence or formation. The district court decision was clear. There was a contract formed. In fact, Mr. Hill, while he tried to frame his argument as being to formation or existence, throughout both his briefing and his pleading, he acknowledges that the contract was in fact formed. He acknowledges that it requires him to arbitrate certain things unless it's rendered void. He asked for it to be rendered void and unenforceable. The second question before the district court was, did the plaintiff specifically and directly challenge the delegation clause in the agreement? Courts may not consider a challenge to the agreement as a whole where a delegation clause exists. They may only consider a challenge that goes to the specific directed delegation clause. Mr. Hill did not challenge the delegation clause. In fact, if you follow Justice Scalia's analysis in Rent-A-Center, he spent about two pages looking at what does it take to challenge a delegation clause. The first thing Justice Scalia looked for was did you mention the delegation clause? Good place to start. In that case, he says, well, there's no mention of the delegation clause. We have the same thing here. The complaint for declaratory judgment that Mr. Hill filed makes no mention of the delegation clause. It asks the court repeatedly to avoid the agreement as a whole. You can read the prayer for relief. It says the agreement as a whole should be void based on fraudulent inducement and duress. The second thing that Judge Scalia looked for in Rent-A-Center was, is there some logical connection between the arguments that were made and the delegation clause? Did the plaintiff point his arguments to the delegation clause? Again, Mr. Hill has not made any such argument. The only time that Mr. Hill actually even mentioned the delegation clause before the district court was essentially one time in his opposition to the motion to compel. On page 18 out of 20, he finally gets the delegation clause, which featured prominently in our motion. He gets to it and he says, he doesn't say, Judge, it's void because it's induced by fraud and duress. He doesn't say it's void for any reason. What he said is, Judge, you don't need to get to the delegation clause. You don't even need to consider it because I win on the issue of contract formation. He took the first element that Doordash and Cabala from this court require, which is look at formation of a contract, and he said, Judge, I win there. The delegation clause is not even in front of you. You can't challenge the enforceability of a clause by saying that the court should not reach it. That is our position. Justice Scalia went so far in the Renta Center decision to tell plaintiffs and parties resisting arbitration what you need to do to successfully lodge a challenge against the delegation clause. One of the issues in that case was that in arbitration, you're typically limited on the number of depositions you can take. Justice Scalia said, Jackson, referring to the plaintiff there, Jackson would have had to argue that the limitation on the number of depositions causes the arbitration of his claim that the agreement is unenforceable, to be unconscionable. So, again, how did the arguments that are made actually relate to arbitration of the issue of arbitrability, what Coinbase would refer to as a thwart order dispute? Scalia, referring to other limitations that are imposed by arbitration or rules that are imposed by arbitration, said it may be that had Jackson challenged the delegation provision by arguing that these common procedures, as applied to the delegation provision, rendered that provision unconscionable, the challenge should have been considered by the court. The plaintiff there did not make any such challenge. Likewise, Mr. Hill did not make any such challenge here. He instead only told the district court, don't consider the delegation clause because we're going to win on the issue of contract formation. Rent-a-Center was 2010. Yes, sir. Our decision in Kublai was 2016. Do you think Kublai was a faithful application of Rent-a-Center? Absolutely, Judge. And one of the challenges in preparing the brief in this case was there have been – I had to omit Supreme Court precedent on point because there's just too much of it, both Supreme Court and Fifth Circuit precedent. Kublai was a faithful application. The Greentree servicing decision in 2018, which, Judge Willett, you were part of, was a faithful application of Rent-a-Center. Rent-a-Center has been applied repeatedly by this court and, frankly, Prima Paint going back to 1965, which was the first case where the Supreme Court said if you're challenging an arbitration provision, it's not good enough to challenge the contract that contains it. You have to challenge that specific provision. Well, but I ask because, you know, Rent-a-Center seems to state that courts ought to look specifically to the delegation provision and leave the validity of the agreement as a whole to the arbitrator. Kublai instructs us to look first at whether the parties entered into an arbitration agreement and then look at the delegation provision. And that's why I asked if Kublai could be reconciled with a faithful application of Rent-a-Center. My reading of Kublai, and it builds on this court's decision in DoorDash, is that what it's saying is the first element is was there any contract formed at all. If there was no contract, then the court doesn't have to get any further. For instance, that was the case in this court's decision in Willdrill. Willdrill involved a series of oil leases and a purchase of oil leases, and the contract there was a buyer coming in and saying, I will buy the oil leases, but I'll only buy all of them. So until every seller signs my agreement, there's no agreement. They tried then to enforce an arbitration provision. Certain of the sellers tried to enforce an arbitration agreement saying, we want it to sell. Let's go arbitrate about it. And the court said no. Until all of the sellers had signed, there was no agreement. So Kublai does, there's a carve-out. If it's a formation challenge, it goes to the district court. But it has to be a challenge to the formation or existence of a contract. This court has held repeatedly, starting with the cases like Primerica, which cites Perez and Snapple and four or five others. Repeatedly, this court and the Supreme Court have held that challenges based on fraudulent inducement and duress go to validity and enforceability, but not to formation. They don't render the contract having never existed. Under Louisiana law, does it matter whether the defenses of fraud and economic duress make a contract void versus void of bold? I don't know that it does, but to the extent it does, that supports our position. Louisiana Civil Code Articles 2031 and 2032 speak to relative nullity, and they say that when a contract is voidable based on a rule for the protection of private individuals, such as I think it mentions fraud and duress, that is a relatively null contract. But it must be nullified by the party claiming nullity with the filing within five years. It doesn't mean that the contract doesn't exist. It means that the contract can retroactively be rendered null. That's what Mr. Hill is asking the court to do here, is to retroactively render the contract null. But that issue doesn't go to formation or existence. That goes to validity and enforceability. That's the issue that has been repeatedly by this court referred to arbitration. We're not saying he doesn't get to make these arguments. We're not saying he's lost his opportunity to claim fraudulent inducement or duress. What we're saying is that he agreed in the delegation clause specifically to bring those challenges to the enforceability of the larger-scale arbitration agreement. He agreed to bring those in arbitration. I can address the decision that Mr. Hill has almost exclusively relied on, the district court's decisions, two decisions actually, in Nunez. Those are also formation cases. Mr. Hill has said repeatedly that Nunez is directly on point. Nothing could be further from the truth. Frankly, Rent-A-Sender is directly on point. But the difference in Nunez, first, there was no delegation clause. We filed the contract at issue in Nunez into the record in both English and Spanish to make that point. The injured person in Nunez, first off, he denied that he ever signed anything. He said it in Spanish because he didn't speak English. The contract that was presented to him was presented in English. It didn't have his name on it. It didn't have the name of the ship he was serving on. It didn't have the date of his accident. In a foreign language, he didn't read. Those details about his accident that he was supposedly agreeing to arbitrate were later substituted into the agreement by a revision performed after he had allegedly signed it. It was under those circumstances that Judge Fallon said, there's no meeting of the minds. There's no agreement at all. Nothing was ever formed because the person looking at a document, if he signed it, which he disputed, he didn't even know what he was looking at. So we think that case is obviously distinguishable on those grounds. If there are no other questions, I will cede my time back to the Court. Thank you. Good morning, and may it please the Court, Jacques Degree on behalf of the Plaintiff-Appellee Jeremiah Hill. As the Court is aware by now, Mr. Hill is a seaman. He's a ward of this Court, the district courts, and all the courts of this country. He's afforded special protections under the Jones Act and the General Maritime Law. In this case, Judge Zaney and the district court correctly analyzed, made the first steps in determining whether there is a valid agreement to arbitration. He did it correctly, and he should be affirmed. Here's what he looked at, and here's what is glossed over by the appellants throughout their briefing and discussions or arguments on this issue. The Federal Arbitration Act, Section 2, provides that arbitration clauses in maritime contracts are enforceable. Nobody disputes this is a maritime contract, but Section 2 has one additional provision. The end of it states, save upon such grounds as exist at law or in equity for the revocation of any contract or is otherwise provided in other places in the FAA. Section 4 of the FAA is invoked when the appellants, in this case in the district court, filed their motion to compel arbitration. Section 4, as the Court is aware, says that upon hearing the parties and the Court determining that the making of the agreement is not an issue, shall order the arbitration to proceed. In this case, though, the making is an issue, and it's specifically addressed there. If the making of the arbitration agreement or the failure, neglect, or refusal to perform that be an issue, the Court shall summarily proceed to trial. It's an important point here that Judge Zaney has not ordered that there will never be arbitration in this case. Judge Zaney simply looked at Section 4 and the case law that we both cite and said, I am not satisfied that there's not an issue with the making of the contract in this case, and he has ordered discovery to take place so that he can then hold that trial that's required under Section 4. Section 4 says that if the parties ask for a jury, they would get a jury trial. For purposes of this, we have waived the right to the jury and requested that the Court or advised the Court we would consent to a bench trial on these issues. Now, why in this case the fact that Mr. Hill is a seaman is important, and there are three things that this arbitration agreement or the advanced wage and benefit agreement addresses. One, there's a recitation of several facts that Mr. Hill initialed. Then there are two obligations on Mr. Hill's part. Everything else in this contract is for Jackson Offshore, the appellants, to handle or to provide in favor of Mr. Hill. Mr. Hill agreed to arbitrate claims and waive his right to a jury, and he agreed that the arbitrability would be referred to the arbitrator. And that is important because what is the framework in which Judge Zaney made his opinion? And that is Mr. Hill has submitted his sworn affidavit. His affidavit testimony establishes that he was injured in April 2023. He was sent out on deck in 12-foot-plus seas after having exercised stop-work authority twice that day. As soon as he went out on deck, waves crashed over the deck of the supply vessel. A container slid across the deck and crushed his leg into the side of the vessel. He was eventually airlifted to University Hospital, where doctors said the medical records are replete with references to the traumatic amputation of his leg. Over 30 days, he endured 10 surgeries. He's had more since then. If you were to ask Mr. Hill how many surgeries he's had, he would say, I've honestly lost track. Throughout that time, 30 days in the hospital, 4 to 6 weeks in an inpatient rehab facility, Mr. Brian Jackson, the CEO and president of Jackson Offshore, visited Mr. Hill routinely. Mr. Hill, the Jones Act seaman, is awarded or afforded maintenance and cure no matter what unless he has made a material misrepresentation. There's no defense to maintenance and cure at issue in this case that I'm aware of or has not been yet. Mr. Hill was told by Mr. Jackson on every hospital visit multiple times per week, hey, don't worry about it. We're worried about you. The company's going to take care of everything. But every one of those assurances came along with a warning. But if you consult with an attorney, not if you retain one, just if you consult an attorney, you're going to be cut off and the company's assistance is going to stop. He never once explained to Mr. Hill that no matter whether he consults an attorney, retains an attorney, or files a lawsuit, that he is entitled to his cure expenses and medical treatment until maximum medical improvement, and he never explained to him that he would be entitled to a daily maintenance stipend for his basic living expenses. He led Mr. Hill throughout this time to believe that if he spoke with a lawyer, all the assistance would end. They put Mr. Hill in the apartment. In October, Mr. Jackson and Mr. Harkness, the CFO of the company, showed up unannounced at Mr. Hill's apartment that they were paying for, presented him with the three-page agreement, and said, you need to sign this. Mr. Hill, all detailed in his affidavit testimony, requested time to consider it, to look it over, to think about it. He was told no. He raised the question of where he initialed the line that says, I have had the opportunity to consult with an attorney. He specifically said to Mr. Jackson, but you've told me that I can't. Mr. Jackson said nothing. He looked at him and requested again that he sign it. Ultimately, Mr. Hill was forced to sign the agreement under fear that if he didn't, he would be completely cut off and he'd be rendered homeless, and in his own words, he didn't want to end up in a wheelchair on the side of the road at a stoplight with a sign asking for money. Now, why is that important? I'm going to come all the way back to Section 2, where it's save for such grounds that exist at law or in equity. Louisiana law and general maritime law both recognize duress, fraud, as defenses to contracts. Judge Vann. Excuse me. Everything you're saying goes to the validity and enforcement of the contract as a whole and not to the arbitration clause or, more specifically, the delegation clause? Your Honor, it And it seems like this is on all fours. It's free to paint in a lot of other cases. It is. It goes to the contract as a whole, yes. It also goes to those two specific arbitration provisions. What was specifically discussed about the arbitration clause and the delegation clause? Between Mr. Hill and his employer? Yes. Other than what they told him was that you were giving up your right to a jury trial and you have to sign this. They did not have any in-depth discussion about any of the agreement when Mr. Hill went to sign it. I'd also like to point out there's never been a countervailing affidavit provided by either of the only two witnesses to this entire transaction. And if Your Honor were to refer to our complaint in paragraph 37 of the complaint, which is at the record at page 15, we specifically challenged not just the whole agreement but the arbitration provisions. There are only two arbitration provisions in that. One is that it will be referred to arbitration, and one is that arbitrability will also be referred to the arbitrator. Those have been challenged here. So this court and the courts in this circuit employ notice pleading. We have put them on notice. They have the sufficient facts to know what it is that Mr. Hill was challenging. So if the court looks, this was not briefed. I believe the opinion came out in January of this year in Modern Perfection, 126 Federal 4th, 235. This was this court's opinion, and I believe it was the first one post-Coinbase, which the district court relied on to an extent. And the court looked at this and they said, look, there are four different classes of challenges, but importantly there is no prohibition against a party challenging on the same grounds the entire agreement, the arbitration provision, or the so-called delegation clause. It is permitted, and that's what's been done here. Ultimately, when you have a case of fraud or duress, it was on a three-page contract that requires Mr. Hill to do two things, go to arbitration and go to arbitration over the arbitration. That's a classic case of this is a challenge to everything based on the same set of facts, the whole agreement, the arbitration provision, and the delegation clause. What exactly are the fraudulent statements that your client believes Jackson Offshore made to you? My client's belief was that, based on those statements, was that if he did not sign the agreement and he consulted with an attorney, that the company would completely cut him off of all benefits, including his maintenance and cure. So were we to affirm, what are the additional facts that you're hoping to unearth in discovery? What we would hope to unearth in discovery is evidence, outside evidence, other than my client's testimony or persuasive testimony with the court, where the court would be able to determine that, yes, this, in fact, this underlying agreement, and whether we're talking about the whole agreement, the arbitration provision, or the delegation clause, and very specifically the delegation clause, was brought about because Mr. Hill was lied to and repeatedly led to believe that if he didn't sign the agreement or that if he retained or consulted an attorney, the company would cut him off. The only reason he signed it was because that's what they led him to believe, and that's what they convinced him. Well, surely he knows if the word arbitration was mentioned in his discussions with his lawyer. It was. What they told him was that you would still be able to bring your claims. You would just be waiving your right to a jury. Did he mention, did he, he would know if the word arbitration was mentioned? He would know if it was mentioned, yes. When he presented us with the agreement, he really, he didn't understand the full concept of the agreement, right? Mr. Hill is, he's a high school graduate. He's worked offshore for years. He's made good money, but he is, he's not an attorney, and he did not understand the full impact of that. And has expressed that, you know, he would not have signed this, he would not have agreed to any of this if he had known that what they were telling him was false. So all of these cases in Kubla, the court specifically held, the only question after finding that there is, in fact, a valid agreement to arbitrate, I'll read that in in brackets, is whether the delegation clause is, in fact, a delegation clause. In this case, our case, this is an example of, there is no valid agreement, and there is no valid delegation clause because it was brought about by fraud. And the court, this court has also said, interpreting or relying on prima paint, that if the claim is fraud in the inducement of the arbitration clause, which is what we have here, and that would include the delegation clause, then the statutory language requires that the federal court then proceed to adjudicate it. That's all we're asking the court to do here is follow sections two and four of the FAA, the prior case law, all of which requires that there be a valid arbitration agreement, that is not vitiated by fraud, duress, et cetera. And in this case, we have that. For years, the courts in this circuit and this court have all agreed that in the context of Jones Act semen, it's a parallel track, not directly on point here, but when a semen settles his claims, it is of the utmost importance that he understand exactly what he is giving up. The courts afford those release agreements, the semen settlement, strict scrutiny, and what we're asking is that the court do the same thing here for that same class of protected individuals. Now, on the Garza-Nunez case that Judge LaMelle, I believe, Judge Fallon decided approximately 20 years ago, the reason it is on point, and I have not found another case on point in any circuit or the U.S. Supreme Court where a Jones Act semen has been led to sign an arbitration agreement through fraud or while under duress. So while the other cases are illustrative, they do not entail the same facts, and they all establish one thing is that we have to make sure the agreement is valid. In Garza-Nunez, the court was presented with the argument in opposition to a motion to compel arbitration that there was no valid agreement, and the court said, yes, we should follow Section 4 of the FAA and determine whether or not there is a valid agreement to arbitrate. That's where we're asking the district court to do which they did, and we are asking this court to affirm that because it is the correct thing to do. Now, the district court may hear testimony and rule against us, and if so, that may be it. But at this point in time, it has not been foreclosed that there will be no agreement. Arbitration is not foreclosed. The judge is simply following the steps required by this circuit, the Supreme Court, and the Federal Arbitration Act. If the panel has no further questions, I will also give my time back. Judge Willett, listening to my friend Jacques' response gave me a better understanding, I think, of what you were asking me about Kubala. Kubala does use the phrase valid agreement as the first step, and if I'm understanding your question, there are a number of cases that use the word valid sort of differently. Valid agreement, as I think the Supreme Court has interpreted, includes an agreement that is later determined to be unenforceable. Valid agreement can mean just an agreement was formed. The parties sat, they met, there was a meeting of the minds, they signed the agreement. Maybe the next day, one of them wanted to back out, wanted to rescind it, thought, I discovered more information, there was error. But a valid agreement is an agreement that was formed, I think is the way Kubala used it. As you've seen, a lot of my opponents' arguments go to the merits about what happened. We look forward to our day in quote-unquote court in arbitration to argue the merits. The reason we haven't filed counteraffidavits is because by filing counteraffidavits, we could be seen as litigating the question of arbitrability. We could be then argued to have waived our right to arbitrate that question. So believe me, my client is not at all pleased about some of the representations that have been made in a public forum. We will absolutely refute them, but we can't yet. And not only we can't, but we're not supposed to. Prima Paint, and numerous cases have followed, but Prima Paint says it is wrong for a court to consider the merits of a dispute when it's only asked to resolve a higher-order question of arbitrability. Just briefly, though, to one in particular, the claim that nobody ever explained to Mr. Hill his rights under the arbitration agreement or, I'm sorry, his rights to maintenance and cure. On page two of the agreement he signed, he was asked to read the following numbered statements carefully. Number three says, I understand that I am not obligated to sign this agreement and that I will continue to receive $50 per day as maintenance and that my medical bills relating to my injuries will be paid until I am fit for duty and or reach maximum medical improvement, even if I don't sign this agreement. So he can say, nobody ever told me that. But he signed an agreement, and further down in the agreement, he was asked, have you read this paper from beginning to end? He initialed and said yes. Do you know what this paper is that you're signing? He initialed and said yes. What is this paper? An advanced wage and benefits agreement. He says that he didn't understand his right to a jury trial. It's spelled out in the document, and he was asked to write in his own handwriting, what are you agreeing to? And the very first thing he wrote is, waiving trial by jury, claim will be decided by arbitrator. So he clearly knew he was signing. The idea of changing the rules because Mr. Hill is a ward of the court, we understand the concept of wards of the court. It's a general maritime law concept. It's judge-developed. Here we have the Federal Arbitration Act. This is not a general maritime law question. This is a statutory question. Justice Kavanaugh, in the Henry Schein decision, was asked to evaluate another judge-made exception to the Arbitration Act, which was if a court looks at the agreement and says, well, it's completely obviously void, the argument that this is subject to arbitration is frivolous. If a court decides it's frivolous, this court and others said, well, we don't have to enforce the arbitration agreement there. Justice Kavanaugh said no. Quote, he said, we must interpret the act as written, and the act in turn requires that we interpret the contract as written. It's the same here. There is no carve-out in the Federal Arbitration Act for Jones Act seaman who signed post-accident arbitration agreements. There is, I would point out, a carve-out in the Federal Arbitration Act for a Jones Act seaman who has an arbitration agreement in his employment contract. Congress, looking at Jones Act seaman, said, we are going to give them a little bit more protection than everyone else. We're going to say that if it's in their employment contract, it's not enforceable. That's not the case here. He signed this as a separate freestanding agreement after his injury because he wanted the benefits. He is today, as we sit here, he's still living in an apartment paid for under this agreement by my client. He's never turned down any of the money. He's been paid under the agreement. He just doesn't want to fulfill his side. And the last point I would make, the Modern Perfection case. I think my friend misspoke. It's a Fourth Circuit case. It's not a Fifth Circuit. I actually provided it to him earlier this week because I think it's an excellent case showing a post-Coinbase application of rent-a-center. Coinbase did not detract from rent-a-center in any way. It actually reinforced it. Footnote 2 of Coinbase, excellent read. Thank you. Thank you, Keith.